# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

EFRAIN CASADO,

    Plaintiff,

v.

SUZANNE R. HASTINGS; ALLEN L. ADAMS; OFFICER REYNOLDS; AREMU BOLAJI; and OFFICER PIERCE,

    Defendants.

CIVIL ACTION NO.: CV214-135

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), filed a cause of action pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). (Doc. 1.) Plaintiff filed an Amended Complaint. (Doc. 10.) A frivolity review of Plaintiff's Complaint, as amended, was conducted, and the Magistrate Judge recommended Plaintiff's action be dismissed based on Plaintiff's failure to state a claim upon which relief could be granted. (Doc. 11.) Plaintiff filed Objections to this Report and Recommendation, as well as a second Amended Complaint. (Docs. 14, 21.) Because Plaintiff has submitted another Amended Complaint, an in an abundance of caution, the Magistrate Judge's Report dated November 17, 2014, is hereby **VACATED**, and the undersigned enters the following in its stead. Consequently, Plaintiff's Objections to the now vacated Report and Recommendation should be **DISMISSED** as moot.

After conducting a frivolity review of Plaintiff's Amended Complaint, (doc. 21), the undersigned finds that the Amended Complaint should be **DISMISSED** in its entirety and this case should be **CLOSED**. Additionally, Plaintiff's "Letter Motion", (doc. 24), is **DENIED**. Finally, Plaintiff should be **DENIED** *in forma pauperis* status on appeal.

STANDARD OF REVIEW

In any civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, Section 1915A requires the Court to screen the complaint for cognizable claims before or as soon as possible after docketing. The court must dismiss the complaint or any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b)(1) & (2).

In conducting this initial review, the Court must ensure that a prisoner plaintiff has complied with the mandates of the Prison Litigation Reform Act, 28 U.S.C. §§ 1915 & 1915A. However, in determining compliance, the Court shall be guided by the longstanding principle that *pro se* pleadings are entitled to liberal construction. Haines v. Kerner, 404 U.S. 519, 520 (1972); Walker v. Dugger, 860 F.2d 1010, 1011 (11th Cir. 1988).

In addition, the Court is guided by the Eleventh Circuit Court of Appeals' opinion in Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). In Mitchell, the Eleventh Circuit interpreted the language contained in 28 U.S.C. § 1915(e)(2)(B)(ii), which is nearly identical to that contained in the screening provisions at Section 1915A(b). As the language of Section 1915(e)(2)(B)(ii) closely tracks the language of Federal Rule of Civil Procedure 12(b)(6), the court held that the same standards for determining whether to dismiss for failure to state a claim under Rule 12(b)(6) should be applied to prisoner complaints filed pursuant to Section

1915(e)(2)(B)(ii). Mitchell, 112 F.3d at 1490. While the court in Mitchell interpreted Section 1915(e), its interpretation guides this Court in applying the identical language of Section 1915A.

Pursuant to Mitchell and subsequent precedent, a dismissal pursuant to Section 1915A (b)(1) for failure to state a claim is governed by the same standards as dismissals for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). See Jones v. Bock, 549 U.S. 199, 215 (2007). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Because "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys[,]" they are liberally construed. Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006).

## PLAINTIFF'S ALLEGATIONS

Plaintiff's allegations revolve around a drug test which he alleges incorrectly indicated that he had used an illegal substance during his current incarceration. Specifically, Plaintiff asserts that on June 13, 2013, he provided a urine specimen to Defendant Adams, which tested positive for the presence of buprenorphine, an opiate. (Doc. 21, pp. 3–4.) Plaintiff alleges he received an incident report after the positive test results were returned and was placed in the Special Housing Unit. Id. Plaintiff levies allegations pertaining to the positive drug screen against several Defendants.

Plaintiff maintains he attempted to establish the positive test result was incorrect or a fraud and resorted to going on a hunger strike to prove he had not taken any drugs. (Id. at p. 5.) Plaintiff states he and Defendant Bolaji came to an agreement that, if Plaintiff would begin

3

eating again, he would be able to take a blood test, but Defendant Bolaji did not honor this agreement. (Id. at pp. 5–6.)

Plaintiff avers Defendant Adams agreed during the disciplinary proceedings that he possessed a combined two (2) of Plaintiff's urine samples. (Id. at p. 6.) According to Plaintiff, he attempted to retrieve evidence of his innocence on his own over the course of several months' time and pretended to have information to give to Defendant Adams in exchange for an expungement of his record.

Plaintiff asserts that in May of 2014, Defendant Adams was no longer in charge of collecting urine samples, and Defendant Reynolds took his place. Plaintiff also asserts he asked Defendant Reynolds to give him his test results, and Defendant Reynolds, "with deliberate intentions to give false information to intimidate", told Plaintiff he tested positive for the presence of drugs. (Id. at p. 7.)

Plaintiff claims Defendant Pierce "has on several occasions tried to antagonized (sic) the Plaintiff, with the deliberate intent to harass." (Id.) Plaintiff also states Defendant Pierce "racially profiled" him on several occasions, with "deliberate intentions to harass" by singling out Plaintiff from other inmates doing the same thing Plaintiff was doing. (Id.) Plaintiff asserts in his "final confrontation" with Defendant Pierce, he "mention[ed] that this is the kind of treatment someone get's (sic) for writing Officer's (sic) up." (Id.)

Plaintiff also names as a Defendant the Southeast Regional Office Director of the Bureau of Prisons, who Plaintiff claims failed to properly investigate and take immediate corrective action, according to policy. Additionally, Plaintiff names Suzanne Hastings, the warden at FCI Jesup, who Plaintiff maintains "is at fault for engaging in 'constructive knowledge negligence' that a 'reasonable GS13 Officer' should have known and been aware of the the (sic) substantial

risk of violation committed." (Id. at pp. 2–3.) Plaintiff also maintains Defendant Hastings is at fault "for engaging in the deprivation of the wrong done in deliberate indifference negligence for the cover-up and non-disclosure of favorable evidence." (Id. at p. 3.)

DISCUSSION

Plaintiff's allegations appear to implicate numerous theories of liability, and the undersigned addresses each of these theories in turn. The Court accepts, as it must at this stage, Plaintiff's non-conclusory factual allegations as true.

## I. Official Capacity Claims

It is unclear whether Plaintiff names Defendants in both their individual and official capacities. However, to the extent Plaintiff brings claims against Defendants in their official capacities for monetary relief, his claims are due to be dismissed under the doctrine of Eleventh Amendment sovereign immunity. "Bivens only applies to claims against federal officers in their individual capacities; it does not create a cause of action for federal officers sued in their official capacities." Sharma v. Drug Enforcement Agency, 511 F. App'x 898, 901 (11th Cir. 2013) (citing Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 69–71 (2001)). "'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit,' and '[t]he terms of the federal government's consent to be sued in any court define that court's jurisdiction to entertain the suit.'" Id. (quoting JBP Acquisitions, LP v. United States ex rel. FDIC, 224 F.3d 1260, 1263 (11th Cir. 2000)). There being no evidence the federal government waived its immunity from suit, Plaintiff's official capacity monetary claims against all Defendants should be **dismissed**.

## II. Plaintiff's Claims Against Defendants Hastings and Southeast Regional Director

A plaintiff must set forth "a short and plain statement of the claim showing that [he] is entitled to relief." FED. R. CIV. P. 8(a)(2). At most, Plaintiff asserts that Defendants Hastings

5

and the Southeast Regional Director failed to take immediate action or to investigate, which is against policy. Allegations concerning a violation of policy do not set forth viable Bivens claims. See Stallworth v. Huffman, No. 07-0439-KD-B, 2008 WL 2858591, at *15 (M.D. Ala. July 22, 2008) (citing Cagle v. Sutherland, 334 F.3d 980, 986-87 (11th Cir. 2003) (a violation of a policy alone is insufficient to show a defendant acted with deliberate indifference)). As Plaintiff has failed to make any other factual allegations against Defendants Hastings and the Southeast Regional Director which reveal that these Defendants violated his constitutional rights, his claims against these Defendants should also be **dismissed**.

In addition, it appears Plaintiff seeks to hold Defendants Hastings and the Southeast Regional Director liable based solely on their supervisory positions. "It is well established in this circuit that supervisory officials are not liable under Bivens for unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. As Plaintiff has failed to make the basic showing that these Defendants were personally involved in or had personal knowledge of alleged violations of Plaintiff's constitutional rights, Plaintiff's claims against Defendants Hastings and the Southeast Regional Director should be **dismissed** on this additional basis.

### III. Due Process Claims

#### A. Substantive Due Process

"The Due Process Clause protects against deprivations of 'life, liberty, or property without due process of law.'" Kirby v. Siegelman, 195 F. 3d 1285, 1290 (11th Cir. 1999)

(quoting U.S. CONST. amend. XIV).[1] The Supreme Court has identified two situations in which a prisoner can be deprived of liberty such that the protection of due process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 1290–91 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

Plaintiff fails to allege any sanctions which may have been imposed as a result of disciplinary proceedings that would plausibly constitute an "atypical and significant hardship" on Plaintiff in relation to the ordinary incidents of prison life. Plaintiff states that he was placed in the special housing unit. (Doc. 21, p. 5.) However, Plaintiff fails to make even a bare allegation that any imposed sanctions caused a change in his conditions of confinement which were much worse than those conditions for prisoners in the general population. Even when construed in the light most favorable to Plaintiff, his allegations do not rise to the level of an atypical and significant hardship. Consequently, he does not state a plausible claim for a substantive due process violation, and such claims should, therefore, be **dismissed**.

---

[1] Plaintiff is a federal prisoner who has made allegations against federal actors; thus, the Fifth Amendment right to due process is applicable to his claims. However, the case law applicable to 42 U.S.C. § 1983 claims is also applicable to Bivens claims. Kelly v. Serna, 87 F.ed 1235, 1238 (11th Cir. 1996).

**B.     Procedural Due Process**

Plaintiff ostensibly contends he was not allowed to present what he maintains is exculpatory evidence during his disciplinary proceedings.[2] An inmate states a cognizable claim for the deprivation of his procedural due process rights under the Fourteenth Amendment when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). Constitutionally adequate process requires compliance with the minimum due process protections accorded to an inmate in prison disciplinary proceedings: (1) the right to receive written notice of the charges against him at least 24 hours before his hearing; (2) the right to call witnesses and present documentary evidence, where doing so would not be unduly hazardous to institutional safety or correctional goals; and (3) the right to receive a written statement setting forth the disciplinary committee's findings of fact. Wolff v. McDonnell, 418 U.S. 539, 563–66 (1974). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Tedesco v. Sec'y for Dep't of Corr., 190 F. App'x 752, 757 (11th Cir. 2006) (internal citation omitted). In addition, an inmate facing disciplinary sanctions is not entitled to the full panoply of rights afforded to criminal defendants. Id. Pertinent to this action, the Eleventh Circuit has explained that, "nothing in Wolff or its progeny constitutionally require[s] providing" an inmate with a copy of any test results prior to a disciplinary proceedings. Id.

---

[2] Plaintiff does not set forth any allegation that the disciplinary proceedings resulted in the loss of statutory good conduct time credit. Even if he had, this action would not be the proper avenue, as such allegations should be raised via the filing of a 28 U.S.C. § 2241 petition. United States v. Harris, 12 F.3d 735, 736 (7th Cir. 1994) (noting Section 2241 is the proper vehicle to use when challenging prison disciplinary proceedings); see also O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (A prisoner has a protected liberty interest in statutory good time credits, and, therefore, a prisoner has a constitutional right to procedural due process in the form of a disciplinary hearing before those credits are denied or taken away.).

8

Even when read liberally, Plaintiff's allegations fail to establish that he was denied basic rights to procedural due process. To the contrary, it appears that Plaintiff received more than sufficient process. For example, Plaintiff alleges that he cross examined Officer Adams at the hearing. (Doc. 21, p. 6.) To be sure, Plaintiff contends that he was not able to have his DNA tested to dispute his positive drug screen. (Id. at p. 5.) However, such discovery is not required to provide an inmate constitutionally adequate process. See Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52 (2009) (refusing to recognize unqualified due process right to access DNA evidence in post-conviction setting). As the District Court of New Jersey explained in a similar case where a prisoner challenged the process afforded at a disciplinary proceeding based on his positive drug screen, "[P]risoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. A fortiori, prisoners do not have the right to production of laboratory reports underlying the charges of which prisoners are duly informed, *or to DNA testing of disputed evidence*, etc." Wilson v. Hollingsworth, No. CIV.A. 15-0076 RMB, 2015 WL 333314, at *5, n.8 (D. N.J. Jan. 23, 2015) (emphasis added) (citing Wolff, 418 U.S. at 569–70); see also, Rodriguez v. Kampfer, No. 15-CV-00101-SMY, 2015 WL 1187599, at *2 (S.D. Ill. Mar. 12, 2015) ("Further, the denial of any request for DNA or polygraph testing would not provide any additional support for Plaintiff's due process claim"); Brown v. Dotson, No. 1:07CV114-03-MU, 2007 WL 1033359, at *3 (W.D. N.C. Apr. 2, 2007) (inmate facing disciplinary charges for writing a threatening note was not constitutionally entitled to DNA tests in connection with the hearing).

In the case at hand, Plaintiff fails to state a plausible claim that his right to procedure due process was violated, and any such claim should, therefore, be **dismissed.**

### IV.     Deliberate Indifference Claim

In his Amended Complaint, Plaintiff mentions in the most conclusory manner that Defendants were "deliberately indifferent." (Doc. 21.) However, Plaintiff entirely fails to state in what way Defendants were deliberately indifferent in violation of the Eighth Amendment. A plaintiff states a cognizable claim for relief under Bivens if his complaint alleges facts showing that his rights, as secured by the Constitution and the laws of the United States, were violated. The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. This duty to safeguard also embodies the principle expressed by the Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), forbidding prison officials from demonstrating deliberate indifference to the serious medical needs of inmates. However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994). In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007).

Plaintiff has entirely failed to make any specific allegations which could plausibly reveal Defendants were deliberately indifferent to his safety or his medical needs. Plaintiff does not

even allege a threat to his safety or that he had a serious medical need. Consequently, his deliberate indifference claims should be **dismissed**.

## V. Negligence Claims

Plaintiff also mentions in his Amended Complaint that Defendants acted with "negligence." (Doc. 21.) However, an allegation that a defendant acted with negligence in causing a plaintiff injury is not sufficient to support a claim under Bivens. See Daniels v. Williams, 474 U.S. 327, 330–31 (1986); Baker v. McCollan, 443 U.S. 137, 146 (1979); Menard v. United States, No. 5:11-cv-108, 2012 WL 139484, *3 (M.D. Fla. Jan. 18, 2012) (mere negligence does not arise to the level of a constitutional violation to state a viable Bivens claim). For this reason, Plaintiff's negligence claims should be **dismissed**.

## VI. Equal Protection Claims

"To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the [government] engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1318–19 (11th Cir. 2006) (internal citation omitted). The equal protection clause prohibits only intentional discrimination. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Plaintiff makes nothing more than conclusory statements that Defendant Pierce discriminated against him based on his race and that other inmates were treated more favorably than he was. Plaintiff fails to allege he is similarly situated with any other inmate or to set forth any assertions which reveal that Defendant Pierce intentionally discriminated against him. Plaintiff fails to state a viable equal protection claim, and accordingly, any such claim should be **dismissed**.

## VII. Conspiracy Claims

A conspiracy "to violate another person's constitutional rights violates" <u>Bivens</u>. <u>See Rowe v. City of Fort Lauderdale</u>, 279 F.3d 1271, 1283 (11th Cir. 2002). "To establish a prima facie case of [a <u>Bivens</u>] conspiracy, a plaintiff must show, among other things, that defendants 'reached an understanding to violate [his] rights.'" <u>Id.</u> (quoting <u>Strength v. Hubert</u>, 854 F.2d 421, 425 (11th Cir. 1988)). Plaintiff makes nothing more than a bare assertion that Defendants conspired together, which is an insufficient basis of liability under <u>Bivens</u>. Plaintiff's conspiracy claims should be **dismissed**.

## VIII. Injunctive Relief

Plaintiff has requested "injunction damages" against Defendants. (Doc. 21, p. 11.) To obtain injunctive relief, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest. <u>Schiavo ex rel. Schindler v. Schiavo</u>, 403 F.3d 1223, 1225–26 (11th Cir. 2005). In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." <u>Horton v. City of Augustine, Fla.</u>, 272 F.3d 1318, 1326 (11th Cir. 2001). Plaintiff has not satisfied the prerequisites for a preliminary injunction. Specifically, Plaintiff fails to demonstrate that he has a substantial likelihood for success on the merits of his claims, as the undersigned has recommended that Plaintiff's various claims be dismissed. Accordingly, Plaintiff's injunctive relief request should be **denied**.

**IX.    Legal Mail Opening (Doc. 24)**

Plaintiff filed a pleading which has been docketed as a "Letter Motion" in which he requests that his legal mail be "recognized and stamped with the proper notice of having the mail to be open (sic) in his presence." (Doc. 24.) To the extent Plaintiff's pleading is a motion, his motion is **denied**. The Court recognizes that a prisoner's constitutional right of access to the courts requires that legal mail may only be opened in an inmate's presence Al-Amin v. Smith, 511 F.3d 1317, 1331 (11th Cir. 2008). "In the Eleventh Circuit, incoming court mail is considered legal mail." O'Connor v. Carnahan, No. 3:09CV224-WS/EMT, 2014 WL 293457, at *7 (N.D. Fla. Jan. 27, 2014) (citing Taylor v. Sterrett, 532 F.2d 462, 475–76 (5th Cir. 1976)). However, on the record before the Court and at this stage of this proceeding, the Court does not have sufficient information before it to determine that Plaintiff's rights have been violated in this regard, much less enough information to fashion relief for any such violation. Should Plaintiff feel his legal mail has been interfered with, he may file a separate cause of action detailing factual allegations in support of this claim.

**X.    Leave to Appeal *In Forma Pauperis***

The Court should also deny Plaintiff leave to appeal *in forma pauperis.* Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cnty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the

factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's Amended Complaint, Plaintiff's potential *in forma pauperis* status on appeal should be **DENIED**, as there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Plaintiff's Amended Complaint, (doc. 21), be **DISMISSED** based on his failure to state a claim upon which relief may be granted. It is also my **RECOMMENDATION** that this case be **CLOSED**. It is my further **RECOMMENDATION** that Plaintiff be **DENIED** *in forma pauperis* status on appeal. Additionally, Plaintiff's Letter Motion, (doc. 24), is **DENIED**.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report to which objection are made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 13th day of May, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA